IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMEN RAMONA SÁNCHEZ-MERCED, et al.,<br><br>    Plaintiffs<br><br>       v.<br><br>MIGUEL A. PEREIRA-CASTILLO, et al.,<br><br>    Defendants | CIVIL NO. 08-2056 (JP) |

**OPINION AND ORDER**

Before the Court is a motion to dismiss (**No. 23**) filed by Defendants Miguel Pereira-Castillo, Héctor Fontánez-Rivera, Ramón Díaz-Correa, Gilberto Negrón-Falcón, José Ortiz-Roque, Luis Rosado, and Wilfredo Arroyo-Ledée ("Appearing Defendants"). Also before the Court is Plaintiffs Carmen Ramona Sánchez-Merced and Raquel Álvarez-Cárdenas' opposition thereto (No. 28). Plaintiffs filed the instant case pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as supplemental Puerto Rico law claims. Appearing Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Appearing Defendants' motion to dismiss is hereby **GRANTED IN PART AND DENIED IN PART.**

CIVIL NO. 08-2056 (JP)          -2-

## I.  **FACTUAL ALLEGATIONS**

Plaintiffs are the mother and widow of decedent Ángel Luis Medina-Sánchez ("Medina").  Decedent Medina was an inmate in the Puerto Rico correctional system who was incarcerated at a prison known as Guayama 296.  Plaintiffs allege that during the early evening hours of September 19, 2007, Medina was outside of his cell performing his usual chores in the "day room" area of the inmates' living quarters in Guayama 296's Building 1.  Medina's chores consisted of providing food and water to the other inmates in their individual cells.

Plaintiffs allege that while Medina was going about this process, Defendant Officer Toe[1] suddenly opened the door to the cell of inmate Florentino López-Liciaga ("López"). Plaintiff alleges that Officer Toe was the Correctional Officer in charge of the control in Building 1, and had exclusive command over the electronic locking mechanism that manipulated the individual cell doors within Building 1. When Officer Toe opened the door to Lopez's cell, Lopez burst out of the cell and attacked Medina with a shank.  Medina repelled the initial attack and called for help. Defendants Richard Roe 1, 2, 3, and 4 were allegedly all in the vicinity of Building 1 and heard the cries for help, but failed to go to the day room area to assist Medina.

---

1.   Plaintiff's complaint references several unnamed Doe Defendants involved in the alleged facts.  The Court refers to said Defendants using the same placeholder names used in the complaint.

CIVIL NO. 08-2056 (JP)          -3-

Due to the lack of assistance and superior physical strength of Lopez, Medina was unable to subdue his assailant, who stabbed Medina seventeen times throughout his body.  Eventually, Lopez believed that Medina was dead and did not continue the attack.  Medina was left alone on the floor without receiving first aid from Defendants Richard Roe 1, 2, 3, and 4, who were immediately outside of the day room area watching the wounded Medina.  After approximately half an hour, Medina finally received assistance and was taken to the medical area.  He was then transferred to the Cristo Redentor Hospital in Guayama and then to the Río Piedras Medical Center.  Medina died the following day as a result of multiple stab wounds.

During the time of the events giving rise to the complaint, Defendant Miguel Pereira Castillo ("Pereira") was the Secretary of Corrections and Rehabilitation of the Commonwealth of Puerto Rico. Defendant Héctor Fontánez-Rivera ("Fontánez") was the Auxiliary Administrator of Security and/or the Director of Security at the Central Office of the Administration of Corrections.  Plaintiffs allege that Pereira and Fontánez were responsible for designing and implementing practices and procedures that would ensure inmates' safety.

On and before the date of the alleged attack, Defendant Ramón Díaz-Correa ("Díaz") was Director of the Eastern Region for the Administration of Corrections.  Defendant Gilberto Negrón-Falcón ("Negrón") was Security Director for the Eastern Region.  Plaintiffs

CIVIL NO. 08-2056 (JP)          -4-

allege that Defendants Díaz and Negrón were responsible for adequately training and deploying staff at the various institutions within the Eastern Region, including Guayama 296, so as to ensure the safety of the inmates.

Defendant Jose Ortiz Roque ("Ortiz") was the Superintendent of the Guayama 296 correctional facility during the time of the alleged facts. Defendant Luis Rosado ("Rosado") was the Commander of the Guard at Guayama 296, and Defendant Wilfredo Arroyo-Ledée ("Arroyo") was the Shift Commander in Guayama 296 at the time of the attack. Plaintiffs allege that Defendants Ortiz, Rosado, and Arroyo were responsible for the deployment of staff within Guayama 296, and for implementing practices and procedures to ensure the safety of the inmates at Guayama 296.

## II. **LEGAL STANDARD FOR A MOTION TO DISMISS**

The Supreme Court has established that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 570. The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

CIVIL NO. 08-2056 (JP)          -5-

can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

### III. **ANALYSIS**

Appearing Defendants argue that Plaintiffs' claims against them should be dismissed because: (1) the allegations of the complaint are insufficient to satisfy the standards for bringing a claim pursuant to Section 1983; (2) Plaintiffs have no Fifth Amendment claim because the Fifth Amendment applies to federal government action and the instant case involves only allegations regarding state government actions; (3) Plaintiffs' Fourteenth Amendment claims should be dismissed because said claims should be brought under the Eighth Amendment only; and (4) Appearing Defendants are entitled to qualified immunity. The Court will now consider the Appearing Defendants' arguments in turn.

#### A.   **Section 1983**

Appearing Defendants' motion contains three arguments regarding Section 1983, which are addressed in different parts of their motion. Appearing Defendants argue that: (1) Plaintiffs have not adequately alleged individual involvement of the Appearing Defendants;

CIVIL NO. 08-2056 (JP)          -6-

(2) Plaintiffs have not provided allegations to satisfy the standards for supervisory liability under Section 1983; and (3) only Plaintiff Carmen Ramona Sánchez-Merced has standing to bring a Section 1983 claim on behalf of decedent Medina because she, as his mother, is the decedent's heir. The Court will address the first two issues in a single section, and then will proceed to consider the argument regarding Plaintiffs' standing to bring a suit on behalf of decedent Medina.

### 1.   Individual Involvement and Supervisory Liability

Section 1983 provides a procedural mechanism for enforcing federal constitutional or statutory rights. See Albright v. Oliver, 510 U.S. 266, 271 (1994). In order to prevail on a Section 1983 claim, a plaintiff must demonstrate that the defendant (1) acted under color of state law and (2) deprived him of the identified federal right. See Cepero Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (quoting Romero Barceló v. Hernández Agosto, 75 F.3d 23, 32 (1st Cir. 1996)). Puerto Rico is considered a state for Section 1983 purposes. Rivera-Lugaro v. Rullán, 500 F. Supp. 2d 28, 39 (D.P.R. 2007).

Under Section 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (citing Kostka v. Hogg, 560 F.2d 37, 40 (1st Cir. 1977)). A plaintiff must demonstrate personal involvement

CIVIL NO. 08-2056 (JP)          -7-

by showing an affirmative link between the deprivation of a plaintiff's rights and the defendant's conduct. See Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 192 (1st Cir. 1998). In the context of a supervisor whose subordinate carried out the actions affecting a plaintiff's rights, "[t]hat affirmative link must amount to 'supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.'" Aponte-Matos, 135 F.3d at 192 (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1998)).

In the instant case, the alleged deprivation of a federally protected right consists of a violation of the Eighth Amendment protection against cruel and unusual punishment. Under the Eight Amendment, "[p]rison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderón-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002) (internal citations omitted). "Nevertheless, not every injury a prisoner suffers at the hands of another prisoner is actionable." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1970)).

Prison officials violate the Eighth Amendment requirements only if: (1) the deprivation alleged is objectively, sufficiently serious; and (2) the prison official was deliberately indifferent to an inmate's health or safety. Deliberate indifference requires "something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or

CIVIL NO. 08-2056 (JP)          -8-

with knowledge that harm will result." Id. A prison official is deliberately indifferent if: (1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk. Id.

Here, the requirement that the deprivation is sufficiently serious is easily met in light of the severe attack that Medina suffered and the resulting loss of life. Therefore, the Court must examine the second requirement and determine whether Plaintiffs' complaint adequately alleges that the Appearing Defendants were deliberately indifferent to decedent's safety. Plaintiffs' complaint alleges that:

> all of the Supervisory Defendants were very well aware that the decedent had been the victim of a prior violent and brutal assault at the hands of fellow inmates while at Guayama 296, that he had received threats of violence and that inmates at that correctional facility had previously used shanks to attack the decedent and to inflict deadly wounds on, at least another inmate, yet failed to take the necessary measures, procedures, practices and precautions to preclude inmates from manufacturing, securing, hiding and/or using shanks and to prevent such violent attacks in reckless disregard of the decedent's right to be free and secure from acts of violence by other inmates.

Compl. ¶ 3.5.

In Calderón-Ortiz, the First Circuit considered a complaint involving similar allegations. The complaint in that case alleged an attack upon a prisoner by other prisoners, and alleged that: "all defendants were aware that inmates were being housed without adequate regard to their custody and security needs. . . . All defendants were

CIVIL NO. 08-2056 (JP)          -9-

aware that this practice is unreasonably dangerous." Calderón-Ortiz, 300 F.3d at 65. The complaint also alleged that "Nevertheless, no defendant took any measure to put an end to this practice." Id. at 66. In considering whether the complaint adequately alleged deliberate indifference, the First Circuit determined, "[a]ccepting as true the allegations described above and drawing all reasonable inferences in favor of plaintiffs, we hold that plaintiffs have stated a section 1983 claim." Id. In light of this determination, the Court of Appeals vacated the District Court's order granting the defendants' motion to dismiss. Id.

   Like in Calderón-Ortiz, the Plaintiffs in the instant case have alleged that Appearing Defendants knew of a substantial risk of serious harm and disregarded that risk. At the motion to dismiss stage, the Court must accept these allegations as true. A higher standard will apply at the summary judgment stage, and at that point the Court will consider whether Plaintiffs can produce an evidence sufficient to support their allegations regarding deliberate indifference. See e.g., Burrell v. Hampshire County, 307 F.3d 1 (1st Cir. 2002) (affirming grant of summary judgment on basis that defendant prison officials were not deliberately indifferent to inmate's safety). However, in the context of the instant motion to dismiss, the Plaintiffs have adequately alleged each of the elements of their claim for an Eighth Amendment violation pursuant to Section 1983. Accordingly, the Court **DENIES** Appearing Defendants'

CIVIL NO. 08-2056 (JP)          -10-

motion to dismiss for failure to satisfy the Section 1983 standards of individual involvement or supervisory liability.

### 2.   Standing to Bring Claim on Behalf of Decedent

Appearing Defendants argue that relatives of an individual harmed by state actors generally do not have an independent cause of action pursuant to Section 1983. Defendants cite numerous case supporting this proposition, and Plaintiffs do not dispute said rule in their opposition to the motion to dismiss. Therefore, the only claim available in Section 1983 cases in which the individual whose rights were violated dies is the claim of the decedent himself, which is brought on his behalf by his heirs.

Appearing Defendants then argue that decedent Medina's only heir is his mother, Plaintiff Carmen Ramona Sánchez-Merced. Appearing Defendants assert that Plaintiff Raquel Álvarez-Cárdenas, decedent Medina's widow, is not his heir under Puerto Rico law and therefore may not participate in his inherited cause of action. Appearing Defendants provide no case law or statute to support this position. Plaintiffs, by contrast, cite several cases finding that a widow is an heir under Puerto Rico law. See e.g., Mangual v. Toledo, 536 F. Supp. 2d 127, 134 (D.P.R. 2008) (permitting widow to bring Section 1983 claim in representative capacity on behalf of decedent). In addition, Plaintiffs note that the Puerto Rico Court of First Instance decreed, in the particular case of decedent Medina, that both Plaintiffs are his heirs.

CIVIL NO. 08-2056 (JP)          -11-

Because Plaintiffs are decedent Medina's heirs under Puerto Rico law, the Court **DENIES** Appearing Defendants' motion to dismiss Plaintiffs' inherited Section 1983 claims for lack of standing. However, to the extent that the complaint alleges independent claims by Plaintiffs on their own behalf for their own damages, the Court **GRANTS** Appearing Defendants' motion to dismiss said claims.

### B.  Fifth Amendment Claims

The Appearing Defendants argue that Plaintiffs' Fifth Amendment claims should be dismissed because the Fifth Amendment only applies to actions attributable to the federal government, and Plaintiff's allegations do not relate to federal government actions.  Plaintiffs respond by arguing that it is an open issue whether the Fifth or Fourteenth Amendment applies to the Commonwealth of Puerto Rico, and therefore the Fifth Amendment claims should not be dismissed.

In support of their position, Plaintiffs point to a case in which the First Circuit stated that "one or another or both of the Constitution's two due process clauses (that in the Fifth Amendment and that in the Fourteenth) apply to Puerto Rico." Tenoco Oil, Co., Inc. v. Dep't of Consumer Affairs, 876 F.2d 1013, 1017 n.9 (1st Cir. 1989).  More recently, the First Circuit has taken the analytical approach of construing the actions of the Puerto Rico government as actions of a state, which are therefore subject to constitutional limitations via the Fourteenth Amendment. Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007)

CIVIL NO. 08-2056 (JP)          -12-

(finding in case involving Puerto Rico government actors that "[a]s plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim was properly dismissed[]").

In light of the more recent First Circuit law applying Fourteenth Amendment analysis to constitutional claims alleging action attributable to the Commonwealth of Puerto Rico, the Court will follow this approach. Accordingly, the Court **GRANTS** the Appearing Defendants' motion to dismiss Plaintiffs' Fifth Amendment claims. Because the reasoning for this finding is not specific to the Appearing Defendants only, the Fifth Amendment claims will be dismissed as to all Defendants.

### C. Fourteenth Amendment Claims

Appearing Defendants argue that Plaintiffs' Fourteenth Amendment claims should also be dismissed because the due process clause of the Fourteenth Amendment provides no greater protection for prisoners than the Eighth Amendment prohibition on cruel and unusual punishment, and is therefore not an alternative basis for an inmate safety claim. The United States Supreme Court has adopted this position, finding in a case involving inmate safety that "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 327 (1986). In light of the applicable precedent, the Court finds that Plaintiffs have no independent claim pursuant to the Fourteenth Amendment. Accordingly

CIVIL NO. 08-2056 (JP)          -13-

the Court **GRANTS** Appearing Defendants' motion to dismiss the Fourteenth Amendment claims.[2]  This finding is applicable to all Defendants.

### D.   Qualified Immunity

Defendants move to dismiss Plaintiff's complaint on qualified immunity grounds.  The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under Section 1983.  See Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir. 1997). This defense is designed to create a rebuttable presumption of immunity from personal liability to cover executive officers who perform discretionary functions.  See Id.; Scheuer v. Rhodes, 416 U.S. 232 (1974). Government officials are immune from suit when their conduct does not violate clearly established statutory authority or constitutional rights a reasonable person should have known of at the time of the conduct at issue.  Mitchell v. Forsyth, 472 U.S. 511, 524 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

When assessing a claim of qualified immunity, the Court employs a three part test.  See Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003).  The threshold inquiry is whether the plaintiff has

---

2.  While no independent claim exists in this case pursuant to the Fourteenth Amendment, the Court notes that the Fourteenth Amendment is properly invoked for the limited purpose of serving as the source of the incorporation doctrine that makes Eighth Amendment protections applicable to state governments.

CIVIL NO. 08-2056 (JP)          -14-

established a constitutional violation.  See Savard, 338 F.3d at 27. The second inquiry is whether the law was clearly established at the time of the violation.  Id.  The final question is whether a reasonable official, situated similarly to the defendant, would have understood that the conduct at issue violated the clearly established law.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).

In the instant case, Plaintiffs have raised sufficient allegations to defeat the qualified immunity defense at this point in the litigation.  First, they have alleged violations of the Eighth Amendment pursuant to Section 1983.  Second, Plaintiffs claims come under clearly established rights, namely the right to not be subjected to unsafe prison conditions resulting from prison officials' deliberate indifference.  Finally, the allegations in the complaint indicate that reasonable officials acting in Defendants' capacity would know that disregarding a serious risk of violence to inmates would violate the inmates' rights.  As such, Defendants are not entitled to qualified immunity at this stage of the litigation. See Rivera-Quiñones v. Rivera-González, 397 F. Supp. 2d 334, 345 (D.P.R. 2005) (denying motion to dismiss on the basis of qualified immunity in case involving alleged attack by inmate).

**IV. CONCLUSION**

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Appearing Defendants' motion to dismiss.  The Court will dismiss: (1) Plaintiffs' claims brought on their own behalf pursuant to

CIVIL NO. 08-2056 (JP)          -15-

Section 1983 for damages other than those inherited from decedent Medina; (2) Plaintiffs' Fifth Amendment claims; and (3) Plaintiffs' Fourteenth Amendment claims.  Remaining before the Court are Plaintiffs' inherited cause of action brought pursuant to Section 1983 for violation of decedent Medina's Eighth Amendment rights, as well as Plaintiffs' supplemental Puerto Rico law claims. A separate Judgment will be entered accordingly.

The Court further notes that Plaintiffs have not filed proof of service upon the unnamed Doe Defendants, and the time limit for service pursuant to Federal Rule of Civil Procedure 4(m) has expired. On or before **March 31, 2010,** Plaintiffs **SHALL** file proof of having identified and served the Doe Defendants within the permitted time frame.  In the absence of such proof of service, the Court will dismiss the claims against said Defendants pursuant to Rule 4(m).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of March, 2010.

                                              s/Jaime Pieras, Jr.
                                                JAIME PIERAS, JR.
                                     U.S. SENIOR DISTRICT JUDGE